UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY D. LOPRESTI,               :

     Plaintiff,               :

V.                              : CASE No. 3:13-cv-976(RNC)

NORWALK PUBLIC SCHOOLS,         :

     Defendant.               :

RULING AND ORDER

     Plaintiff, a former music teacher at Silvermine Elementary
School in the Norwalk public school system, brings this action
under 42 U.S.C. § 1983 alleging that the defendant intentionally
and maliciously exposed her to dangerous mold contamination in a
school building, which caused her to become ill, in violation of
her right to substantive due process under the Fourteenth
Amendment.  The complaint also seeks to recover under state law
for wrongful termination of the plaintiff's employment and
intentional infliction of emotional distress.  The defendant has
moved to dismiss on the grounds that the plaintiff has failed to
exhaust administrative remedies and the allegations of the
complaint fail to state a claim on which relief can be granted.
For the reasons that follow, the motion to dismiss is granted.

I. Background

     The complaint alleges the following.  Plaintiff, an opera
singer, voice teacher and choral conductor, was employed by the

1

defendant school board as a music teacher at Silvermine Elementary School.  Compl. (ECF No. 1) at ¶¶ 6-8.  She began teaching during the 2003-2004 academic year.  Id. at ¶ 11.  In October 2005, she was required to teach in an interior classroom at Silvermine and began suffering chest pains and had difficulty breathing.  Id. at ¶ 12.  Upon seeking medical attention, she learned that her bronchial tubes were almost completely closed. Id.  She was moved to an exterior classroom.  Id. at ¶ 13.  She subsequently experienced the onset of illness every year when she returned to school after the summer break and her breathing and voice began to change.  Id. at ¶ 14.  In June 2008, she suffered her first case of pneumonia, id. at ¶ 13, and in October 2008, she was diagnosed with acute asthma, id. at ¶ 14; she had not experienced pneumonia or asthma prior to working at Silvermine. Id.

In October 2008, plaintiff was diagnosed as highly allergic to mold.  Id. at ¶ 15.  Her physician notified defendant on October 6, 2008, that plaintiff was suffering from a "building related illness" and recommended an air cleaner, air-conditioning, and a window in her classroom.  Plaintiff did not receive an air conditioning unit until May 2009, and the unit did not properly filter the air in her classroom.  Id. at ¶¶ 15-16. After she was moved to a different classroom at the start of the 2010-2011 school year, defendant failed to provide her with an

air conditioning unit until the spring of 2011, and it was insufficient to filter and cool the room.  Id. at ¶ 18.

Meanwhile, plaintiff's condition continued to worsen.  In approximately May 2009, her voice began to drop in vocal range and to make gurgling noises, and she began spitting up mucus. Id. at ¶ 17.  At the end of the 2011-2012 school year, she was hospitalized for pneumonia.  Id. at ¶ 19.  By the beginning of the 2012-2013 school year, when plaintiff was required to teach music throughout the building at Silvermine, id. at ¶ 21, her vocal range had dropped two octaves and she was unable to sing. Id. at ¶ 20.  She could not speak for an extended period of time without her voice cracking and she suffered from severe exhaustion.  Id.  On November 27, 2012, she started wheezing and spitting up bloody mucus while teaching a fourth grade class. Id. at ¶ 21.  The next day, her chest tightened and her head throbbed while she was in the school building.  Id.  On November 29, she was in excruciating pain and had a fever of 103 degrees; her physician sent her to a laboratory for testing, which revealed that she had high levels of mold spores in her bloodstream.  Id. at ¶ 22.  Defendant was informed by plaintiff's physician that she suffered from "building related illnesses due to mold exposure in 2008 at Silvermine" and "should not return to work in any building with a known history of water intrusion and mold."  Id. at ¶ 23.  As a result of the exposure to mold at

3

Silvermine, plaintiff developed a polyp on her vocal chords, an asthma impairment, chronic sinusitis, and allergic rhinitis secondary to mold sensitivity. Her career as a singer has ended and she is unable to perform the essential functions of a vocal teacher. Id. at ¶¶ 24-25. Plaintiff was forced to take early retirement due to total disability in February 2013, but defendant denied her request for continued medical insurance coverage. Id. at ¶¶ 26-27.

Plaintiff alleges a violation of her substantive due process rights under the Fourteenth Amendment as well as state law torts of wrongful termination and intentional infliction of emotional distress. Pl.'s Opp. (ECF No. 19) at 1. Defendant's pending motion seeks to dismiss all the claims on the following grounds: (1) the Court lacks subject matter jurisdiction because plaintiff failed to exhaust her administrative remedies under the applicable collective bargaining agreement or before the Connecticut Commission on Human Rights and Opportunities; (2) the substantive due process claim must be dismissed for failure to state a claim for relief; (3) the wrongful discharge claim must be dismissed because an adequate statutory remedy is available and because plaintiff never complained about or refused to work in unsafe conditions; and (4) the allegations do not support a claim for intentional infliction of emotional distress.

II. Discussion

    A. Failure to Exhaust

    Defendant argues that because plaintiff was a member of a union and had the ability to file grievances under the applicable collective bargaining agreement, her failure to do so deprives the Court of subject matter jurisdiction.[1]  Defendant cites Gerlach v. City of Danbury, No. 3:09-CV-1950 (JCH), 2012 WL 1032796 (D. Conn. Mar. 27, 2012), which dismissed plaintiff's contract claims for lack of subject matter jurisdiction on that basis.  Id. at *10 ("It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union . . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction.").  Gerlach and the state cases on which it relies, however, are limited to contract-related claims and do not necessarily preclude review of plaintiff's constitutional claim in the present case.  See id. at

---

[1] The relevant provision of the collective bargaining agreement between the District and the Norwalk Federation of Teachers provides a Grievance Procedure in Article IV.  See Def.'s Mot. to Dismiss, Ex. B, at 10.  An individual teacher can bring a grievance, which means "a claim based upon an event or condition which affects the welfare or conditions of a teacher, or group of teachers, or a dispute arising over the interpretation or application of the provision of this Agreement or an alleged violation thereof."  Id.

*6-*9 (separately analyzing plaintiff's procedural due process claim for wrongful deprivation of a service connected disability pension before turning to plaintiff's breach of contract claim and failure to exhaust grievance procedures); id. at *11 n. 16 (acknowledging but not reaching plaintiff's argument that "public employees are not required to exhaust their administrative remedies when pursuing a statutory claim" because the "[a]mended [c]omplaint raises a breach of contract claim, not a statutory claim"); see also Saccardi v. Bd. of Educ. of the City of Stamford, 45 Conn. App. 712, 718 (1997) (failure to exhaust fatal to claim alleging violation of memorandum of agreement found to be within scope of collective bargaining agreement grievance procedures).

"[T]here is no requirement in state or federal law that requires Plaintiffs to exhaust their grievance and arbitration procedures before filing a section 1983 suit." DeLoreto v. Ment, 944 F. Supp. 1023, 1030 (D. Conn. 1996). See also Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 502, 102 S. Ct. 2557, 2561, 73 L. Ed. 2d 172 (1982) ("exhaustion of administrative remedies in § 1983 actions should not be judicially imposed"). A contract dispute in the guise of a Section 1983 claim, attempting to evade CBA exhaustion requirements, would be impermissible. See, e.g., Henneberger v. Cnty. of Nassau, 465 F. Supp. 2d 176, 193 (E.D.N.Y. 2006); Saccardi v. Bd. of Educ. of the City of

Stamford, 45 Conn. App. 712, 718 (1997) ("[T]he plaintiff may not choose his administrative remedy through the framing of his own complaint.  If that were possible, the purpose of the exhaustion doctrine would be thwarted.")(citation omitted). However, plaintiff's substantive due process claim is distinct from and independent of any employment contract.  Defendant's argument that the complaint addresses the "working conditions" at plaintiff's school and is thus covered by the CBA sweeps too broadly.  Cf. Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50 (1974) ("In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.").

Defendant further claims that the Court lacks subject matter jurisdiction because plaintiff filed a "virtually identical" complaint with the CHRO, which has not released jurisdiction. Def.'s Mot. to Dismiss (ECF No. 17) at 5.  The CHRO complaint is sufficiently distinct that review of the present action is not precluded.  Although the factual allegations are mostly the same, the CHRO complaint alleges disability discrimination in violation of federal statutes.  See CHRO Complaint, Def.'s Mot. to Dismiss

Ex. D, (ECF No. 17) at ¶¶ 19, 28.  Plaintiff's failure to exhaust
her disability claims at the CHRO does not deprive this Court of
subject matter jurisdiction over her due process claim.  Cf.
Benevides v. Roundhouse, LLC, HHDCV094045477, 2010 WL 1508288
(Conn. Super. Ct. Mar. 8, 2010) (claim not precluded by failure
to exhaust before CHRO because "while the evidence underlying
both complaints may be related or even overlapping, the CHRO
complaint and the present action seek relief for distinctly
different types of harm with separate statutory remedies").

Nor is plaintiff's constitutional claim precluded because it
is based on a workplace injury.  The worker's compensation system
precludes certain state law claims related to a workplace injury,
but it does not prevent a court from hearing federal claims.  See
Worthington v. City of New Haven, 3:94-CV-00609(EBB), 1999 WL
958627, at *8 (D. Conn. Oct. 5, 1999) ("A state law making
recovery under a worker's compensation statute the exclusive
remedy for work-related injuries cannot bar an employee from
seeking relief for employment discrimination under the ADA or
Section 504 in light of the Supremacy Clause of Article VI of the
Constitution.").  Thus, the Court has jurisdiction to consider
plaintiff's substantive due process claim.

B. Failure to State a Claim

Defendant argues that the nonconclusory allegations of the complaint fail to provide a sufficient basis for a substantive due process claim.  I agree.

In Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992), the Supreme Court stated that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." Id. at 129.  The Court held that alleged failure to warn about known risks of harm and allegations of intentional failure to provide required training and equipment, which led to death-by-asphyxiation of plaintiff's husband, were insufficient to shock the conscience as required to state a substantive due process claim.  Id. at 125-26.  See also Lewellen v. Metro. Gov. of Nashville and Davidson Cnty, 34 F.3d 345, 349-351 (6th Cir. 1994)(allegations that defendants acted intentionally in choosing to build school directly beneath high-voltage conductor line, deliberately disregarding very high risk, insufficient to state substantive due process claim under Collins because conduct was not arbitrary or designed to punish).  Similarly, in Lombardi v. Whitman, 485 F.3d 73 (2d Cir. 2007), the Second Circuit held that plaintiffs, who worked at the World Trade Center site in the aftermath of the attacks of September 11, 2001, failed to state substantive due process claims against federal officials for issuing reassuring and knowingly false announcements about air quality in lower Manhattan that induced

9

plaintiffs to work at the site without essential protection.  The court held that the allegations were insufficient to shock the conscience because plaintiffs did not allege that defendants "acted with an evil intent to harm," but instead decided between competing obligations and public goals.  Id. at 82-83; see also id. at 85 ("[A] poor choice made by an executive official between or among the harms risked by the available options is not conscience-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided.").  These cases counsel that a due process claim cannot proceed absent plausible allegations of affirmative actions taken with the intent to cause harm; the allegations in plaintiff's complaint do not meet this standard.

The crux of plaintiff's complaint is that "the defendant intentionally and maliciously has exposed the plaintiff and other teachers and students to a highly dangerous environment over many years, and continues to do so to the present time, thereby inflicting grave physical illness upon the victims.  The defendant has been aware for many years of the dangers presented by the Silvermine Elementary School but consciously has concealed these dangers from the plaintiff, other teachers, and students and their parents, thereby knowingly placing their health and

welfare at grave risk." Compl. (ECF No. 1) at ¶ 28.[2]  Although

the complaint thus invokes the rhetoric of malicious intent to

harm, the allegations of failure to warn and failure to remedy

dangerous mold conditions are insufficient to shock the

conscience as required for a substantive due process claim.  See,

e.g., Allen v. N.Y.C. Housing Authority, No. 10 Civ. 168(CM)(DF),

2012 WL 4794590, at *8-9 (S.D.N.Y. Sept. 11, 2012) (allegations

that defendant knowingly failed to remove mold – a 'passive'

failure to act – and that defendant painted over the mold, an

ineffective and inadequate remedy, insufficient to shock the

conscience, even if plaintiff were to allege that painting over

the mold worsened conditions, because "even a grossly misguided

attempt to address a mold situation cannot be described as

conduct that is 'truly brutal and offensive to human dignity'");

J.S. ex rel. Simpson v. Thorsen, 766 F.Supp.2d 695, 706 (E.D.Va

2011) (allegations that defendants knowingly performed pre-

sampling cleaning to mask moisture and mold conditions, performed

mold investigation without proper training, engaged in improper

mold remediation, and concealed from plaintiff harmful conditions

even though knew of adverse health effects on students and staff

---

[2] Plaintiff's opposition to the motion to dismiss further
asserts: "the defendant made a conscious choice to subject a
largely minority student population and their teachers to the
certainty of illness that could reach life-threatening levels,
rather than spend money to replace what was known to be a highly
toxic building."  Pl.'s Opp. (ECF No. 19), at 7.

did not "plausibly allege intentional conduct <u>intended to</u>
<u>injure</u>")(emphasis in original).  At best, the allegations in the
complaint support a theory of gross negligence.  <u>See, e.g.,</u>
<u>Lewellen</u>, 34 F.3d at 351 (notwithstanding allegations that
defendants acted intentionally, the complaint described gross
negligence not actionable under § 1983 because not intentionally
designed to injure); <u>J.S. ex rel. Simpson</u>, 766 F.Supp.2d at 706
(E.D.Va 2011) (allegations that defendants intentionally misled
plaintiff with respect to mold conditions at child's school and
intentionally engaged in substandard remediation "may amount to
gross negligence" but did not "rise to the level of conduct
'intended to injure'"); <u>Greene v. Plano I.S.D.</u>, 227 F.Supp.2d
615, 619 (E.D.Tex. 2002)(recharacterizing allegations of
"deliberate indifference" as claims that "[d]efendants were, at
most, grossly negligent in the handling of the toxic mold
situation" and finding that such allegations – including that
defendants created and exacerbated the risk of harm from toxic
mold in the design and construction of the school and failed to
take adequate remedial steps - did "not rise to the level of
deliberate misconduct sufficient to establish a constitutional
violation"). Such claims are more properly addressed through
state tort law remedies.  <u>E.g.</u>, <u>Collins</u>, 503 U.S. at 128
("Because the Due Process Clause does not purport to supplant
traditional tort law . . . we have previously rejected claims

that the Due Process Clause should be interpreted to impose
federal duties that are analogous to those traditionally imposed
by state tort law.")(internal citations omitted); <u>DeShaney v.</u>
<u>Winnebago County Dept. of Social Services</u>, 489 U.S. 189, 202
(1989)(the Due Process Clause of the Fourteenth Amendment "does
not transform every tort committed by a state actor into a
constitutional violation").  Accordingly, plaintiff's substantive
due process claim will be dismissed for failure to state a claim
on which relief can be granted.

In the absence of any other federal claims, the Court
declines to exercise supplemental jurisdiction over plaintiffs'
state law claims for wrongful termination and intentional
infliction of emotional distress.  <u>See</u> <u>New York Mercantile Exch.,</u>
<u>Inc. v. IntercontinentalExchange, Inc</u>., 497 F.3d 109, 119 (2d
Cir.2007) ("In general, where the federal claims are dismissed
before trial, the state claims should be dismissed as well."
(citing <u>Marcus v. AT & T Co.</u>, 138 F.3d 46, 57 (2d Cir.1998)).

III. <u>Conclusion</u>

Accordingly, the motion to dismiss [ECF No. 17] is hereby
granted.  The Clerk may close the file

So ordered this 30th day of September 2014.


                    /s/RNC
              Robert N. Chatigny
              United States District Judge